892 So.2d 187 (2004)
Carlos TWILLIE
v.
STATE of Mississippi.
No. 2002-CT-00918-SCT.
Supreme Court of Mississippi.
October 21, 2004.
Carlos Twillie, appellant, pro se.
Office of the Attorney General by Charles W. Maris, Jr. Deirdre McCrory, attorneys for appellee.
EN BANC.

ON WRIT OF CERTIORARI
CARLSON, Justice, for the Court.
¶ 1. Carlos Twillie was indicted in the Jasper County Circuit Court for capital murder in 1994. Twillie pled guilty in *188 1996 and received a sentence of life without parole. In 2002 Twillie filed a petition for post-conviction relief, seeking to set aside his guilty plea. The circuit court denied Twillie's petition, stating that it was barred by the statute of limitations. Twillie appealed, and the appeal was assigned to the Court of Appeals. Initially, the Court of Appeals reversed the circuit court's judgment and remanded for further proceedings. The State then filed a motion for rehearing. The Court of Appeals withdrew the original opinion, denied the State's motion for rehearing, and issued a modified opinion which affirmed the circuit court. Both Twillie and the State of Mississippi filed petitions for writ of certiorari. We granted Twillie's petition but denied the State's petition. Finding that the trial court properly denied Twillie's motion for post-conviction relief, although on improper grounds, we affirm the judgments of both the Circuit Court of Jasper County and the Court of Appeals.

FACTS
¶ 2. In January 1996, Twillie pled guilty to capital murder for an offense committed on January 27, 1994. When Twillie's offense was committed, this State provided only two possible punishments for capital murder. Those options were death or life imprisonment with the possibility of parole. By the time Twillie's plea was entered on January 1996, the statute had been amended to provide a third option of life imprisonment without the possibility of parole.
¶ 3. In exchange for the State's agreement not to pursue the death penalty, Twillie agreed to enter a plea of guilty and have the trial court impose a punishment of life without parole. The trial court accepted this agreement and accordingly sentenced Twillie to life without the possibility of parole.
¶ 4. On April 17, 2002, Twillie filed a request for post-conviction relief claiming that sentencing him to life without the possibility of parole, pursuant to a statute passed after the commission of his offense was an impermissible ex post facto application of the law. By order dated April 17, 2002, the trial judge denied Twillie's petition, stating that the relief sought was "barred by the statute of limitations."
¶ 5. On appeal the Court of Appeals first reversed the judgment of the circuit court and remanded the matter for resentencing, finding that Twillie's sentence was illegal and contrary to public policy because life without parole was not a statutory option at the time of his plea. The State then filed a motion for rehearing, arguing (1) that Twillie's notice of appeal was not timely filed and Twillie's appeal should be dismissed and (2) the statutes controlling Twillie's sentence had been amended before he was sentenced, and therefore life without parole was a legal sentence for Twillie in 1996. The Court of Appeals denied the State's motion for rehearing, stating that the State addressed the merits of Twillie's appeal for the first time in its motion for rehearing. However, acting on its own motion, the Court of Appeals granted rehearing, withdrew its prior opinion and substituted a modified opinion. The Court of Appeals stated in its modified opinion that Twillie's sentence did not amount to an ex post facto violation. Finally, the Court of Appeals held that "[b]ecause death, the ultimate penalty, was allowed under the prior statute, the imposition of a sentence of life without parole is not a more punitive sanction, and, therefore, does not violate the prohibition against ex post facto laws." Twillie v. State, 2002-CP-00918-COA, 892 So.2d 246, 247, 2004 WL 728469, *2 (Miss.Ct.App. April 6, 2004) (citing Swann v. State, *189 806 So.2d 1111 (¶ 35) (Miss.2002); West v. State, 725 So.2d 872 (¶ 19) (Miss.1998)).

DISCUSSION
¶ 6. When reviewing a trial court's decision to deny a petition for post-conviction relief, this Court will not disturb the trial court's factual findings unless they are found to be clearly erroneous. Brown v. State, 731 So.2d 595, 598 (Miss.1999). However, where questions of law are raised the applicable standard of review is de novo. Id. See also Felder v. State, 876 So.2d 372, 373 (Miss.2004).
¶ 7. Before July 1, 1994, Miss.Code Ann. § 97-3-21 (Rev.2000) provided two sentences for one convicted of capital murder: death or life imprisonment with the possibility of parole. Effective July 1, 1994, the option of life without parole was added. The Legislature added the following guideline: "The provisions of this act shall apply to any case in which pre-trial, trial or resentencing proceedings take place after July 1, 1994." 1994 Miss. Laws Ch. 566, § 5.
¶ 8. Twillie argues that because he was charged and indicted before July 1, 1994, the sentencing option of life without parole does not apply to him and amounts to an illegal sentence. He relies on Lanier v. State, 635 So.2d 813 (Miss.1994), and Patterson v. State, 660 So.2d 966 (Miss.1995), where this Court found that agreements to plead guilty to sentences that were not authorized by statute were against public policy and thus not enforceable.
¶ 9. The Court of Appeals first agreed with Twillie, citing Lanier and Patterson. The State then filed a motion for rehearing. Though the Court of Appeals ostensibly denied the State's motion, it reversed itself and adopted the State's position in its second opinion. In the second opinion the court cites West v. State, 725 So.2d 872 (Miss.1998), and Swann v. State, 806 So.2d 1111 (Miss.2002). In both cases the murder took place before July 1, 1994, but the defendant was tried after July 1, 1994. In both cases this Court found that the amended version of § 97-3-21 applied. However, this Court found, in Willie v. State, 738 So.2d 217 (Miss.1999), that agreeing to plead guilty to life without parole for a murder committed in 1989 was different than having a jury render the same sentence. This Court stated:
[U]pon the entry of a valid plea under the statutes in effect at the time of Willie's crime, Willie could only have been sentenced by the trial judge to life in prison. Sentencing Willie to life in prison without parole under the new statute, would, therefore, be harsher than the only option for sentencing in such plea situations. Thus, if Willie chooses to plead guilty on remand, the trial judge may sentence him to life in prison. However, if Willie agrees to a sentence of life in prison without parole, the trial judge should take care to ascertain that Willie has validly waived his ex post facto rights  before accepting the plea agreement.
Moreover, in recent cases, this Court has noted that similar ex post facto ramifications do not exist when such cases are remanded for consideration by a sentencing jury.
Willie, 738 So.2d at 220.
¶ 10. To its petition for writ of certiorari, the State attached a copy of an agreement signed by Twillie; Twillie's statement of understanding on his Petition to Enter Plea of Guilty; and Twillie's Petition to Enter Plea of Guilty to its Petition for Writ of Certiorari. However, these documents were not made part of the record of Twillie's appeal for post-conviction relief. *190 M.R.A.P. 10 governs the record on appeal and states:
(f) Limit on Authority to Add to or Subtract From the Record. Nothing in this rule shall be construed as empowering the parties or any court to add to or subtract from the record except insofar as may be necessary to convey a fair, accurate, and complete account of what transpired in the trial court with respect to those issues that are the bases of appeal.

(emphasis added). Because the basis of this appeal is whether Twillie knowingly, voluntarily and intelligently waived his rights against an ex post facto law, it is necessary that these documents be added to this record to convey an accurate account of what transpired during Twillie's criminal case in the Jasper County Circuit Court. In his Statement of Understanding on Petition to Enter Plea of Guilty, Twillie stated that he understood at the time he committed his crime, the only sentences allowed by statute for capital murder were death and life with the possibility of parole. He also stated that he understood shortly after he was charged with capital murder, the statute was amended to allow for a penalty of life without the possibility of parole. Twillie further stated that:
Both of my above-named attorneys have fully and completely explained all of the constitutional rights and issues of ex post facto law as they relate to this particular capital murder charge, and I fully and completely understand those rights and issues as they apply to this capital murder charge against me, including but not limited to the fact that since this crime occurred on or about January 27, 1994, and Sections 97-3-21 and XX-XX-XXX were not amended until July 1, 1994, so as to allow the statutory penalty of life imprisonment without parole eligibility that it might very well be that if this case went to trial and if I were convicted of capital murder that the only two options a sentencing jury would have would be death or life with parole eligibility.
After full and free consultation with both of my above-named attorneys, I fully and completely understand my constitutional rights as they relate to an ex post facto law and this particular capital murder charge. With this understanding, I expressly waive any and all constitutional rights to object to the imposition of the statutory sentence of life imprisonment without parole on the basis of it being an ex post facto law or on any constitutional basis. I make this waiver intelligently, understandingly, knowingly, freely and voluntarily, and after having consulted with both of my attorneys.
¶ 11. If a defendant in a criminal case can waive the constitutional right to remain silent and give an incriminating confession which eventually places the defendant on death row, it logically follows that a defendant such as Twillie can waive his ex post facto rights and knowingly enter into an agreement to be sentenced to life without parole in order to avoid the death penalty. Therefore, after a thorough review of the record, we find that Twillie validly waived his ex post facto rights when he pled guilty in 1996. To the extent that they stand for the proposition that a defendant can not enter into an agreement similar to the agreement entered into by Twillie in the case sub judice, on the basis of being contrary to public policy, Lanier and Patterson are overruled.

CONCLUSION
¶ 12. Twillie could have pled guilty in 1996 and received life without parole only after he validly waived his ex post facto rights. We find that his waiver of those *191 rights was valid. Although the trial court erred in denying Twillie's post-conviction petition based on the time bar, as Twillie was asserting that he received an illegal sentence  a claim which could not be procedurally barred  we find that because Twillie validly waived his ex post facto rights, the denial of the motion for post-conviction relief by the trial court was proper. We also find that the Court of Appeals erred in finding that West and Swann (as opposed to Willie) were controlling, as both dealt with jury trials, which this Court has distinguished in this context.
¶ 13. For the reasons stated, we affirm the judgments of the Jasper County Circuit Court and the Court of Appeals.
¶ 14. AFFIRMED.
SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.